J-A03004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PHATIMA ROUNDTREE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON L. WILLIAMS SMITH | : | No. 2390 EDA 2022 |

Appeal from the Order Entered August 22, 2022
In the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): 0C1708193

BEFORE: KING, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED APRIL 19, 2023**

Appellant, Phatima Roundtree ("Mother"), appeals from the order entered on August 22, 2022, in the Court of Common Pleas of Philadelphia County, denying her request to relocate with her eight-year-old son, H.H.S., from Philadelphia, Pennsylvania, to Charlotte, North Carolina, and awarding Appellee, Brandon L. Williams Smith ("Father"), primary physical custody and Mother partial physical custody one weekend every month in Philadelphia and during winter, spring, and summer breaks in North Carolina, *inter alia*. Upon careful review, we affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

The record reveals that H.H.S. has lived his entire life in Philadelphia. Mother and Father never married. Mother initiated the underlying custody action in July of 2017. The parties agreed to an *interim* order in September that same year awarding Mother primary physical custody and Father partial physical custody every weekend. On May 25, 2018, the *interim* order became final upon agreement.

On September 9, 2021, Mother filed *pro se* separate petitions to relocate with H.H.S. to Charlotte, North Carolina, and to modify the existing custody order. On September 15, 2021, Father filed *pro se* a petition to modify, wherein he requested primary physical custody of H.H.S. during the school year.

Mother relocated by herself on September 10, 2021. She left H.H.S. in the home of his maternal grandmother in West Philadelphia, where she and H.H.S. resided.[1] N.T., 8/17/22, at 13, 28, 55. There is no dispute that Father, who resides in Southwest Philadelphia, assumed full custody of H.H.S. one month after Mother relocated to Charlotte. *Id.* at 55-56. During the 2021-2022 school year, H.H.S. resided in Father's home with his four-year-old half-sister and her mother. *Id.* at 75.

---

[1] H.H.S.'s maternal aunt also resided in the home of maternal grandmother, and she, along with her two children, moved to Charlotte with Mother. N.T., 8/17/22, at 6, 17. H.H.S.'s remaining maternal and paternal relatives reside in Philadelphia. *Id.* at 18-19, 67-68.

- 2 -

The trial court found that, while the petitions were pending, Mother visited H.H.S. in Philadelphia five to seven times during the 2021-2022 school year. Trial Court Opinion, 10/20/22, at 2 (citing N.T., 8/17/22, at 30). In addition, H.H.S., accompanied by his maternal grandmother, visited Mother three times in Charlotte. *Id.* (citing N.T., 8/17/22, at 72-73).

By *interim* order dated May 26, 2022, the court awarded Mother primary physical custody in Charlotte "after the last day of school until determination at the next court listing." Trial Court Opinion, 10/20/22, at 2; **see also** *Interim* Order, 5/26/22. By separate order the same date, the court relisted the hearing on the pending petitions for August 17, 2022. Thereafter, on August 4, 2022, as the hearing approached, Father filed a counter-affidavit objecting to both the relocation and modification of the order.

The subject proceeding commenced as listed on August 17, 2022, during which Mother was represented by counsel. Mother testified on her own behalf and presented the testimony of H.H.S.'s maternal grandmother, D.T.R. Likewise, Father was represented by counsel. Father testified on his own behalf and presented the testimony of H.H.S.'s paternal grandmother, M.S.

The trial court interviewed H.H.S. *in camera* on August 22, 2022, who was then eight years old and had completed second grade. H.H.S. testified that he preferred to be with Father during the school year and with Mother during the summer and holidays. N.T., 8/22/22, at Volume 2, at 27, 32.

J-A03004-23

H.H.S. testified that, most recently while in Charlotte, he had not seen Father for three months. *Id.* at 19. He explained:

It was sad. I broke down every day. I just wanted to see my dad. And another thing I like about [being in Philadelphia] is, because me and my little sister, we love each other.

We get along too. And the other thing is my dad — it don't matter what he is doing. He will help me with anything. It don't matter if he at work. He'll stop his day at work and still help me.

*Id.* at 19-20. H.H.S. continued his testimony on inquiry by the court:

Q: Is there anything you don't like about being in Philadelphia —

A: No.

Q: — at your dad's?

A: No. No. No. It's nothing I don't like.

Q: It sounds to me like you have a lot of extended family, like a lot of grandparents, cousins, aunts, uncles here in Philadelphia. Is that true?

A: Mhm.

. . .

A: We got a lot of family.

Q: — a lot?

A: Me and my family tight. Like we all — we like — we all like this. Like if you could put a bunch of fingers just like this, like this, we like this.

Q: Wow.

A: And we all — we go. If we got a cookout, none of my family is — none of my family members would miss not one single cookout. . . .

- 4 -

*Id.* at 25. Following H.H.S.'s testimony, the court ruled in Father's favor and set forth its reasoning on the record in open court. N.T., 8/22/22 (Volume 1).

By order dated and entered on August 22, 2022, the trial court denied Mother's request to relocate with H.H.S. The court awarded the parties shared legal custody, Father primary physical custody, and Mother partial physical custody during "winter break, spring break and summer break in North Carolina from the day after school ends until the day before school starts." Order, 8/22/22, at 2. In addition, the court awarded Mother partial physical custody of H.H.S. in Philadelphia one weekend per month during the school year.

Further, the order provided, "If and when Mother relocates back to Philadelphia, Father will retain primary physical custody of the child. Mother shall have partial physical custody of the child every weekend. . . ." *Id*. The order also provided, "Neither party is to use marijuana in the presence of the child." *Id*.

Mother timely filed a notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on October 20, 2022.

Mother presents the following issues for review:

[I]. Whether the judge erred as a matter of law and fact, issued a clearly erroneous decision and/or abused its discretion in denying the Mother's relocation petition[.]

> [a]. Whether the judge erred as a matter of law and fact, issued a clearly erroneous decision and/or abused

- 5 -

her discretion in failing to understand that Mother was afraid to disobey a court order by moving the child to Charlotte before getting court permission.

[b]. Whether the trial court's decision, opinions and/or factual findings were based upon insufficient evidence and/or were misapprehension of the evidence.

[c]. Whether the trial court's factual and/or legal findings were an abuse of discretion, clearly erroneous and/or errors of fact based upon the evidence presented.

[II]. Whether the judge erred as a matter of law and fact, issued a clearly erroneous decision and/or abused its discretion in taking away primary custody from Mother, particularly as she has been the primary custodial parent since birth with limited exception[.]

Mother's Brief at 5 (suggested answers omitted).

We review Mother's issues according to the following scope and standard of review:

[T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa.Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the

opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa.Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa.Super. 2014).

The primary concern in custody cases is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual well[-]being." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa.Super. 2006)(citing *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa.Super. 2004)).

Child custody actions are governed by the Child Custody Act ("Act"), 23 Pa.C.S.A. §§ 5321-5340, which became effective on January 24, 2011. With respect to a request for relocation, the Act provides, "The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h)." *Id.* at § 5337(i)(1). Further, "Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." *Id.* at § 5337(i)(2).

Section 5337(h) provides as follows.

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

*Id.* at § 5337(h).

The trial court was also required to consider the custody factors set forth in the Act, as follows.

### § 5328.  Factors to consider when awarding custody.

**(a)  *Factors.*** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a); *see also A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa.Super. 2013) (stating that, when making a decision on relocation that also involves a custody decision, "the trial court must consider all ten relocation factors and all sixteen custody factors" outlined in the Act.).

This Court has emphasized that the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case."

- 10 -

*M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013)(citing *A.D. v. M.A.B.,* 989 A.2d 32, 35-36 (Pa.Super. 2010)). Further, we have explained that Section 5323(d) of the Act "requires the trial court to set forth its mandatory assessment of the [. . .] factors prior to the deadline by which a litigant must file a notice of appeal." *A.V.*, 87 A.3d at 823 (citations omitted). This Court has stated:

> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M. v. M.L.G.,* 63 A.3d 331, 336 (Pa.Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). *Id*.

*Id.* at 822-823.

Instantly, the trial court weighed all the Section 5337(h) relocation factors in Father's favor except for (5), (9), and (10), which it found inapplicable. With respect to the Section 5328(a) custody factors, the court weighed (1), (4), (5), (6), and (7) in Father's favor. The court weighed (14) in Mother's favor. The court found (3), (9), (10), (12), and (13) neutral between the parties, and it found inapplicable (2), (2.1), (7), (15), and (16).

Turning on the merits of this appeal, Mother baldly asserts that in fashioning the subject order, the court "was punishing [her] for leaving the child behind and actually obeying the law." Mother's Brief at 16. Mother contends the court failed to understand why she moved to Charlotte without H.H.S. We disagree.

- 11 -

Mother does not provide citations to the record to support her claim, and our review finds none. To the contrary, the court indicated that it understood Mother's reason for relocating without H.H.S. while her petitions were pending. Mother testified on inquiry by the trial court:

Q: [S]o you moved without [H.H.S.]?

. . .

A: Because I was waiting to come to [c]ourt to get approved that I can take him out of state. . . .

Q: I understand. I understand. . . .

N.T., 8/17/22, at 28. There is no evidence that the court fashioned the order to punish Mother. As detailed below, the court thoroughly considered all of the statutory relocation and custody factors and issued the order based on them.

The crux of Mother's first issue is that the trial court failed to place determinative weight on her assertion that the proposed relocation would substantially enhance her quality of life and that of H.H.S. Mother's Brief at 16-17. In support, Mother relies upon **Gruber v. Gruber**, 583 A.2d 434 (Pa.Super. 1990), wherein this Court reversed, in part, the order denying the mother's request to move with the children out of Pennsylvania. In that case, we concluded that the court erred in denying the mother's request because she satisfied her burden of proving that the proposed move "would

significantly and directly improve the quality of her life for herself and therefore her children."[2] *Id.* at 441. Mother's issue is without merit.

*Gruber* predated the effective date of the Act. This Court has recognized, "The *Gruber* test has been incorporated into the ten factors enumerated in Section 5337(h); specifically, they are embodied in the third, sixth, seventh and eighth factors." *C.R.F. v. S.E.F.*, 45 A.3d 441, 446 (Pa.Super. 2012). As such, in *C.R.F.*, this Court vacated the custody order granting the mother's request to relocate with the children because the trial court based its decision on the *Gruber* test and not on the Section 5337(h)

_____

[2] In *Gruber*, this Court set forth the following three-factor test for trial courts to use in relocation cases.

> First, the court must assess the potential advantages of the proposed move and the likelihood that the move would substantially improve the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent.
>
> . . .
>
> Next, the court must establish the integrity of the motives of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it.
>
> . . .
>
> Finally, the court must consider the availability of realistic, substitute visitation arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Gruber*, 583 A.2d at 439.

relocation factors. Thus, Mother's reliance on *Gruber* is misplaced. Mother's argument fails insofar as the trial court considered all of the Section 5337(h) relocation factors and based its decision on them.

In this case, Mother assails the court for not placing determinative weight on her testimony that Charlotte provides both a better lifestyle and physical safety for H.H.S. than Philadelphia. *See* N.T., 8/17/22, at 43 (Mother testified "that it's a better opportunity for him in Charlotte than it is in Philadelphia; when it comes to like him going outside, and playing, enjoying himself, and being a kid. . . . Dad lives in [S]outhwest. And I live in West Philly. I don't think that's two great neighborhoods for a kid to go outside and play by [him]self."). Mother's argument implicates Section 5447(h)(1), (6), and (7).

With respect to Section 5337(h)(1), the nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life, the court found, in relevant part:

> Both Mother, the relocating party, and Father, the non-relocating party, have played an active role in raising child. The child has extensive extended family in Philadelphia, on both sides of his family. Mother moved to North Carolina with maternal aunt and child's cousins. Mother does not have any other family in North Carolina. The child has a close relationship with his father, [half-]sister and his stepmother in Philadelphia. The court concludes that this factor weighs against relocation. N.T., 8/22/22, [Volume] 1 at 8.

Trial Court Opinion, 10/20/22, at 10.

- 14 -

With respect to Section 5337(h)(6) and (7), whether the relocation will enhance the general quality of life for the parties seeking the relocation and the child, the trial court found, in part:

The only reason that Mother provided for moving to North Carolina, other than to open a nail salon, was safety concerns with the child living in Philadelphia. **However, the [c]ourt finds that this does not outweigh the strong familial, community, and educational bonds the child has in Philadelphia.**

Mother stated that if the [c]ourt denied Mother's relocation, Mother would return to Philadelphia. N.T., 8/22/22, [Volume] 1 at 8. This contradicts Mother's need to relocate with the child. Further, it calls into question Mother's safety concerns she voiced regarding the child living in Philadelphia. The [c]ourt concludes that factors 6, 7, and 8 weigh against relocation.

*Id.* at 12 (some citation to record omitted) (emphasis added). The testimonial evidence supports the court's findings. *See* N.T., 8/17/22, at 98 (on inquiry by the court about whether H.H.S. is safer in North Carolina, the paternal grandmother testified, "I know Philadelphia is going through some challenges right now. But [H.H.S.] has never gotten hurt. . . . He spent every weekend at [Father's house]. . . . [Y]ou just never know what will happen. It can happen here. It can happen in North Carolina. . . ."). We will not disturb the court's weight determinations of Section 5337(h)(1), (6), and (7). *See* *M.J.M.*, 63 A.3d at 339 (the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case.").

In addition, Mother asserts that the court failed to consider that H.H.S. "had always primarily lived and been raised by [M]other, maternal grandmother and maternal aunt." Mother's Brief at 17. She asserts then that

H.H.S.'s "primary household was intact even in Charlotte." *Id.* at 18. Mother's argument fails because the trial court was not required to give weighted consideration to her prior role as primary caretaker when considering the relocation factors. *See W.C.F. v. M.G.*, 115 A.3d 323, 330 (Pa.Super. 2015) (citing to *M.J.M.*, 63 A.3d at 339).

Mother also raises in her first issue that the court abused its discretion in denying her relocation request because Father admitted to smoking marijuana. Mother's Brief at 19. Mother asserts that Father smokes it in front of H.H.S. We discern no abuse of discretion.

Father acknowledged that he smokes marijuana. N.T., 8/17/22, at 78. He testified he smokes it "probably . . . every weekend." *Id*. However, Father testified he does not smoke it in H.H.S.'s presence. *Id*. On rebuttal, Mother testified on inquiry by the trial court:

> Q: If you were real worried about Dad smoking weed, you could have stayed here and not moved to North Carolina.
>
> A: But also [paternal grandmother] and my mother reassured me that everything will be okay. That they was going to help [Father] with [H.H.S.].

*Id.* at 102.

With respect to the Section 5328(a) custody factors, the trial court weighed only one in Mother's favor, that is, (a)(14), the history of drug or alcohol abuse of a party. We discern no abuse of discretion by the court in not placing determinative weight on this factor. In addition, the court included in the subject order the directive that "Neither party is to use marijuana in the

presence of the child." Order, 8/22/22, at 2. As such, Mother is not entitled to relief on this claim.

Mother's final contention in her first issue raises a procedural question. She emphasizes that Father filed a counter-affidavit objecting to both the relocation and modification of the existing custody order on August 4, 2022. Mother asserts that Father's counter-affidavit was untimely and should have been stricken. Mother's Brief at 23; *see also* 23 Pa.C.S. § 5337(d)(2)("An objection made under this subsection shall be filed with the court within 30 days of receipt of the proposed relocation notice. . . ."). We disagree.

In response to Mother's September 9, 2021 petitions to relocate and to modify the existing custody order, Father filed *pro se* a petition to modify on September 15, 2021, wherein he requested primary physical custody of H.H.S. during the school year. This remained his position at the time of the subject proceeding nearly twelve months later. To the extent that Mother argues that Father waived his objection to H.H.S.'s relocation during the school year to Charlotte, we disagree. We conclude that he sufficiently preserved his claim.

In her second issue, Mother assails the weight that the court placed on the Section 5328(a) custody factors, and she repeats many of the same assertions she made regarding the weight the court attributed to the Section 5337(h) relocation factors, which we have concluded do not entitle her to relief.

Here, we review Mother's contentions with respect to Section 5328(a)(3), the parental duties performed by the parties, and (10), which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child. The trial court weighed both of these factors neutrally between the parties. Mother argues that the court should have weighed them in her favor because she "is the one who met all of the child's medical needs. . . ." Mother's Brief 27. Further, she asserts that Father testified that paternal grandmother "is the one who often took the child out on adventures or to events." *Id.* at 26.

There is no dispute that H.H.S. is a healthy child with no special needs. Father acknowledged that Mother scheduled "most of the doctor's appointments." N.T., 8/17/22, at 77. Father testified that he went to medical appointments with H.H.S., and there is no evidence on this record that he is incapable of scheduling them for H.H.S. during the school year. *Id*. Father testified that, despite the existing custody order awarding him partial physical custody every weekend, H.H.S. began living with him on a consistent basis in May of 2020. *Id.* at 62. Father testified that this new custody arrangement began during the COVID-19 pandemic. *Id*. He explained on direct examination that H.H.S.'s first grade classes were held by Zoom and

> this is no shade to Mom at all, but Mom can't help him. When . . . he used to do Zoom classes, she used to have so much trouble trying to help [H.H.S.] she would have to call me.

And then I would have to literally be on a FaceTime with my son, and through his whole class any time he needed help. And this is when I was working remotely. So even —

THE COURT: But I thought he was with you.

A.     — To the couple days where Mom was off of work, and he spent with Mom. And I lie to you not. It may have been one to two days every three weeks.

The couple days that he was with Mom, she would be calling me. "He needs help with this." And it became so much of a problem that he started to stay with me full time.

*Id.* at 66, 69. Moreover, Father testified, "I felt like anything regarding school I always had to handle that with [H.H.S.]. Like [Mother] has never been a — like a force, like a force in school." *Id.* at 63. Further, he testified:

Q. So do you think that if the child were to live in North Carolina, what type of support he would get down there . . . in the home with Mom and her sister as far as his academics are concerned?

A. Not a lot. And again, that's no shade at all. But I really just feel like as far as school is not a priority to them. [A]nd school doesn't stop when your child leaves the door at school. He still needs assistance after that.

*Id.* at 70-71.[3]

In addition, Father testified that he enrolled H.H.S. in karate class prior to him going to Charlotte in the summer of 2022. N.T., 8/17/22, at 68. He testified that H.H.S. and his four-year-old half-sister "both attended swimming. [H.H.S.] did basketball at the YMCA. And he also – he raps. So

---

[3] The trial court found H.H.S. "super smart." N.T., 8/22/22, Volume 2, at 23. In addition, Mother testified that H.H.S. is "very smart." N.T., 8/17/22, at 22.

we keep him into that. Like he has little videos." *Id.* at 64. With respect to the paternal grandmother's involvement with H.H.S., Father testified that she takes H.H.S. and his half-sister "everywhere. Like anything they want to do as far as amusement parks, things like that. Takes them out shopping to the mall and things like that." *Id.* at 67.

Finally, we observe that Father confirmed his strong relationship with H.H.S. He testified, "Me and my son are extremely close. . . . It does not go a day where I don't speak to him." *Id.* at 71.

Based on this testimony, and our review of the totality of the record evidence, we conclude that the court reasonably weighed Section 5328(a)(3) and (10) neutrally between the parties. We will not disturb the custody order awarding Father primary physical custody and Mother partial physical custody one weekend per month during the school year, and during winter, spring, and summer breaks, where the trial court carefully and thoroughly considered H.H.S.'s best interests, and we discern no abuse of discretion. Accordingly, we affirm the order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2023